| | | |
|---|---|---|
| I LOVE JUICE BAR FRANCHISING, LLC, | ) ) ) | |
| Plaintiff, | ) ) | NO. 3:19-cv-00981 |
| | ) | JUDGE RICHARDSON |
| v. | ) ) | |
| ILJB CHARLOTTE JUICE, LLC; and Brian MacIntosh, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff's I Love Juice Bar Franchising, LLC ("ILJB")'s unopposed Motion for Default Judgment (Doc. No. 51, "Motion"), seeking a default judgment against Defendants ILJB Charlotte Juice, LLC ("ILJB Charlotte") and Brian MacIntosh. Defendants have failed to plead or otherwise defend this action. Default was entered against Defendants by the Clerk of Court on March 3, 2020 and April 16, 2020, pursuant to Fed. R. Civ. P. 55(a). (Doc. No. 50). For the reasons discussed below, Plaintiff's Motion is **GRANTED**.

## BACKGROUND

A. <u>Factual Background</u>[1]

Plaintiff ILJB is a Tennessee limited liability company engaged in the business of franchising independent businesspersons to operate I Love Juice Bar franchised businesses

---

[1] The facts stated here are taken from the Complaint and are accepted as true for purposes of adjudicating the Motion. Upon entry of default, a complaint's well-pleaded factual allegations pertaining to liability are taken as true. *See Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (holding that entry of default judgment "conclusively establishes every factual predicate of a claim for relief"); *In re Family Resorts of Am., Inc.*, No. 19-cv-4127, 1992 WL 174539, at *4 (6th Cir. July 24, 1992); *Reid v. Herrera Harvesting LLC,* No. 2:17-cv-229, 2020 WL 2473491, at *1 (E.D.

1

throughout the United States. I Love Juice Bar Holdings, LLC ("ILJB Holdings") is the owner of the trademarks, service marks, logos, emblems, trade dress and trade name "I Love Juice Bar," and related marks. I Love Juice Bar franchisees are licensed to use "I Love Juice Bar" trade names, service marks, and trademarks and to operate under the I Love Juice Bar system, which involves the production, merchandising, and sale of blended-to-order fruit and vegetable juices and smoothies and related products. As of the filing of the Complaint, there were approximately forty I Love Juice Bar shops across the southern and midwestern United States.

In or about May 2017, Juice Bar and ILJB Charlotte entered into two franchise agreements ("Franchise Agreements"), which authorized ILJB Charlotte to operate two I Love Juice Bar franchised businesses in Charlotte North Carolina—one at each of two different stores (different physical locations). At the time the Franchise Agreements were executed, Defendant Brian MacIntosh and Stanley Parrish jointly owned ILJB Charlotte. MacIntosh personally guaranteed ILJB Charlotte's obligations under the Franchise Agreements. In 2018, Defendant MacIntosh and Parrish began negotiations with one another to end their relationship as joint owners of ILJB Charlotte.

In December 2018, Defendants requested an early termination of the Franchise Agreements. On December 31, 2018, Dedria Ryan, the then-CEO of ILJB, sent Defendants an early termination letter ("Termination Offer"), which included a provision for a termination fee of $5000 and a noncompetition provision.

---

Tenn. May 13, 2020); *Long v. Morgan*, Nos. 2:17-cv-00072, 2:17-cv-00073, and 2:17-cv-00074, -- F. Supp. 3d --, 2020 WL 1514560, at *1 (M.D. Tenn. Mar. 30, 2020). The facts stated here relate to liability and, as discussed below, are "well pleaded" for purposes of this principle.

Shortly thereafter, Ryan left her employment with ILJB and was replaced in the CEO position by Mollie Murphree. On April 18, 2019, Murphree traveled to Charlotte and met with MacIntosh regarding his two franchised stores.

In September 2019, MacIntosh and Parrish resolved their ownership dispute, and the shares previously owned by Parrish were transferred to Clif Gentle. On or around September 19, 2019, ILJB Charlotte returned to Plaintiff a signed copy of the Termination Offer. On the Termination Agreement returned to Plaintiff, Defendants crossed through the provision requiring Defendants to pay a $5000 termination fee and the provision prohibiting Defendants from operating a "[Competing Business" as defined by the Franchise Agreements.

Thereafter, Defendants began operating Queen City Juicery & Wellness Bar ("Queen City Juicery") out of the each of the same two locations formerly operated as I Love Juice Bar franchises. Queen City Juicery sells fresh juices, smoothies, and plant-based products.

B. Procedural Background

On November 4, 2019, Plaintiff commenced this action by filing a Verified Complaint (Doc. No. 1), bringing claims for breach of contract, misappropriation of trade secrets, trademark infringement, unfair competition, trade dress infringement, and unjust enrichment, and a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 4, "Motion for TRO"). The Summons and Verified Complaint were served on Defendants ILJB Charlotte and McIntosh on November 13, 2019 and November 16, 2019 respectively. (Doc. No. 24 & 25). Although Defendants responded in opposition to the Motion for TRO on November 7, 2019, they have not answered or otherwise responded to the Verified Complaint, either within the time allowed by Rule 12 of the Federal Rules of Civil Procedure or at any point thereafter. On November 15, 2019, the Court granted Plaintiff's Motion for TRO, prohibiting Defendants from operating a competing

3

business, infringing upon Plaintiff's trade dress, or using any Proprietary Marks or Intellectual Property. (Doc. No. 20). On December 20, 2019, after being advised by counsel for Plaintiff that the Parties had reached an agreement in principal to convert the TRO into a Preliminary Injunction pending ultimate trial in this action, this Court entered a Stipulated Order Extending Temporary Restraining Order which stated that the TRO would be continued, "and [would] remain in full force and effect, until entry of an Agreed Preliminary Injunction." (Doc. No. 39). According to Plaintiff, it submitted to counsel for Defendants a proposed Agreed Preliminary Injunction but, as of the date the Motion was filed, has not received a response. (Doc. No. 44).

On March 3, 2020, the Clerk of Court issued an Entry of Default against ILJB Charlotte pursuant to Federal Rule of Civil Procedure 55(a). (Doc. No. 46). On April 16, 2020, the Clerk of Court issued an Entry of Default against MacIntosh pursuant to Federal Rule of Civil Procedure 55(a). (Doc. No. 50). On May 20, 2020, Plaintiff filed the instant Motion pursuant to Federal Rule of Civil Procedure 55(b). (Doc. No. 51). To date, Defendants have not responded to the Motion, and have not filed anything of their own since November 11, 2019, and have not appeared at all through counsel authorized to practice in this Court.[2]

Plaintiff currently seeks the following relief against Defendants, as set forth in the Verified Complaint:

> 1) That Plaintiff be awarded damages in the amount of $83,185, as outlined in the Affidavit of Mollie Murphree;
>
> 2) That Plaintiff be awarded a judgment for the interest on all amounts due from the date due until paid;
>
> 3) That plaintiff be allowed to move, pursuant to Fed. R. Civ. P. 54, for an award of its attorneys' fees, as requested in the Verified Complaint; and

---

[2] As for the attorney who did purport to appear on behalf of Defendants, he is not a member of the bar of this Court, and his motion for admission pro hac vice was denied due to his failure to comply with all requirements for such admission. (Doc. No. 30).

> 4) That a permanent injunction be entered against Defendants in line with the proposed Default Judgment and Permanent Injunction Plaintiffs filed contemporaneously with the Motion.

(Doc. No. 51 at 1-2).

## **LEGAL STANDARD**

In order to obtain a default judgment under Federal Rule of Civil Procedure 55, the plaintiff must have first secured an entry of default from the Clerk of Court, which requires a showing, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend" itself in the action. Fed. R. Civ. P. 55(a). Upon entry of default, if the plaintiff's claim is not for a sum certain, he or she "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

Following an entry of default, as noted in footnote 1 above, the complaint's well-pleaded allegations pertaining to liability are taken as true. However, the default is not considered an admission of damages. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved."). In order to determine damages, the court can, but is not required to, hold an evidentiary hearing. "[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 9–cv–193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009); *see also* Fed. R. Civ. P. 55(b)(2) (A district court "may conduct hearings ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.") (emphasis added)); *Vesligaj*, 331 F. App'x at 354 (Rule 55(b)(2), "by its terms, allows but does not require the district court to conduct an evidentiary hearing").

5

## ANALYSIS

A. <u>Liability</u>

The Clerk of Court has entered default against Defendants. (Doc. Nos. 46 & 50). "Upon entry of default, only those well-pleaded allegations relating to liability are taken as true." *In re Family Resorts of Am., Inc.*, 972 F.2d 347, No. 91-4127, 1992 WL 174539, at *4 (6th Cir. July 24, 1992) (citation omitted). Here, Plaintiff's Verified Complaint asserts six bases for liability against Defendants: breach of contract (Counts I & II), misappropriation of trade secrets (Count III), trademark infringement (Count IV), trade dress infringement (Count VI), unfair competition (Count V), and unjust enrichment (Count VII) (Doc. No. 15-21). Given the entry of default (Doc. No. 44), the Court will accept as true those allegations in the Complaint asserting liability that are "well-pleaded." But that raises the question of when allegations concerning liability are considered "well-pleaded" and when they are not; it also brings into focus the principle that not all allegations of liability are sufficient to support a default judgment. On these issues, one district court has explained:

> A defendant's default does not itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleading for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 15 F.2d 1200, 1206 (5th Cir. 1975). "[I]t follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the [default] judgment." *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). *See also Conetta v. Nat'l Hair Care Centers, Inc.*, 236 F.3d 67, 76 (1st Cir. 2001) (noting that a defaulted defendant "may still contest a claim on the ground that the complaint does not add up to the elements of a cause of action").

*Dalmayer v. Michigan*, No. 08-12784, 2009 WL 1378322, at *2 (E.D. Mich. May 14, 2009). This means that a claim, to be "well-pleaded," must at least satisfy "Rule 8(a) of the Federal Rules of Civil Procedure[, which] sets forth the basic federal pleading requirement that a complaint 'shall

6

contain...a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.*

In the present case, the Court concludes that the allegations of liability underlying Count I through Count VII are well pleaded in that they satisfy Rule 8(a). Among other things, these allegations comply with the pleading standards set forth in the bellwether cases of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The Court therefore accepts that those allegations are true and establish each of the two causes of action. The Court therefore finds that Defendants are liable both for breach of contract and for the statutory violations alleged in the Verified Complaint.

Accordingly, Plaintiff is entitled to a default judgment on each of its seven claims.

B. Damages

"Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (citation omitted). "Proof of damages ordinarily requires an evidentiary hearing in which the defendant may contest the amount, but a hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09–CV–193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009); see Fed. R. Civ. P. 55(b)(2) (A district court "may conduct hearings ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.") (emphasis added)); *Vesligaj v. Peterson*, 331 F. App'x 351, 354 (6th Cir. 2009) (Rule 55(b)(2), "by its terms, allows but does not require the district court to conduct an evidentiary hearing.").

7

The Court concludes that an evidentiary hearing is unnecessary in light of (1) the submission of ILJB's CEO Mollie Murphree's sworn affidavit; and (2) the fact that Defendants have failed to answer or otherwise respond to the Complaint, or respond to the instant Motion or Plaintiffs' attempts to coordinate the filing of an Agreed Preliminary Injunction. *See Vesligaj*, 331 F. App'x at 355 (holding that the district court did not err when denying a hearing and relying on an affidavit as the "evidentiary basis for calculating the unpaid wages and the amount of prejudgment interest on the unpaid wages[.]"); *Disney Enters. v. Farmer*, 427 F. Supp. 2d 807, 814 (E.D. Tenn. 2006) (granting default judgment and awarding statutory damages when defendant failed to defend the action and the district court concluded that no valid purpose would be served by requiring an evidentiary hearing).

Here, the Affidavit of Mollie Murphree states that Defendants owe Juice Bar (1) royalty fees specified in the parties Franchise Agreements totaling $22,225.00 (Doc. No. 51-1 ¶ 5(a)); and (2) liquidated damages in the amount of $60,960, representing an estimate of the actual damages sustained by Juice Bar as a result of Franchisee's breaches of the Franchise Agreements (*id.* at ¶ 5(h)). Upon reviewing the evidentiary proof (*id.*), the Court concludes that Plaintiff is entitled to damages in the contract balance of $83,185.00.

C. Injunctive Relief

Plaintiff submitted a Proposed Default Judgment and Permanent Injunction Against Defendants, which proposes that the Court enjoin Defendants from: (1) operating or engaging, either directly or indirectly through any financial or beneficial interest, in any "Competing Business" through November 22, 2021, as required by the Franchise Agreements' post-termination obligations; and (2) infringing upon Plaintiff's trade dress, and using any Proprietary Marks or Intellectual Property as defined by the Franchise Agreements.

Regarding Plaintiff's request that Defendants—in accordance with the post-termination obligations contained in the Franchise Agreements—cease operating any "Competing Business," cases in this circuit have held that this type of injunctive relief by way of default judgment is appropriate as to defendants who have had notice of the proceedings. *See, e.g., Domino's Pizza Franchising, LLC v. VTM Pizza, Inc.*, No. 15-CV-13312, 2015 WL 9500791 (E.D. Mich. Dec. 31, 2015) (granting motion for default judgment and enjoining defendants from operating any carry-out or delivery pizza store at the business at the former Domino's Pizza location); *Little Caesar Enterprises, Inc. v. Reyes 1, Inc.*, No. 19-CV-11437, 2020 WL 2395206, at *4 (E.D. Mich. May 11, 2020) (requiring defendants fully comply with the post-termination obligations, including defendants' obligation to de-identify their restaurants). In light of their appearance (brief though it was) to contest the Motion for TRO, there is no question that Defendants here have had notice of the proceedings.

Regarding the second type of requested injunctive relief, the Lanham Act provides courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C.A. § 1116.

In order to obtain injunctive relief, a plaintiff must show that: (1) it has suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiff and defendant weighs in favor of a permanent injunction; and (4) it is in the public interest to issue an injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006)). In the case of a default judgment, the court need not hold an evidentiary hearing to grant a permanent injunction, because

9

there are no factual issues in dispute. *See Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005); *Profusion Indus., LLC v. Chem-Tek Sys., Inc.*, No. 5:16-CV-164, 2016 WL 7178731, at *6 (N.D. Ohio Dec. 9, 2016) ("The Court may issue a permanent injunction without an evidentiary hearing when no triable issues of fact are involved.") (citation omitted). The decision whether to grant a permanent injunction lies within the sound discretion of the Court. *Profusion Indus.*, 2016 WL 7178731, at *6.

First, Plaintiff has shown that it will suffer irreparable harm if Defendants are not permanently enjoined from operating a "Competing Business," defined by the Franchise Agreements as "any Store serving as its primary menu offering freshly made to order fruit and vegetable juices or smoothies[.]" As recognized by this Court when it issued the TRO in this case, Tennessee courts have found that the breach of a covenant not to compete can cause irreparable damage. *See Medical Educ. Assistance Corp. v. State ex. Rel. East Tennessee State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 815-16 (Tenn. Ct. App. 1999). "The loss of customer goodwill and injuries that are a consequence of unfair competition are difficult to compute and certainly constitute irreparable harm." *AmericaGas Propane v. Cook*, 844 F. Supp. 379, 390 (M.D. Tenn. 1993); *see also Basicomputer Corp v. Scott*, 973 F.2d 507 (6th Cir. 1992) (noting that "the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer").

Plaintiff has also shown that it will suffer irreparable harm if an injunction is not issued enjoining Defendants from infringing upon Plaintiff's trade dress and using any Proprietary Marks or Intellectual Property as defined by the Franchise Agreements. As discussed above, Defendants' liability has been established by the facts in the complaint, which have been deemed admitted as a result of Defendants' default. Those facts establish that Defendants' use of the "I Love Juice Bar"

10

trademarks and trade names is likely to cause consumer confusion regarding the source and quality of ILJB's products, and is likely to damage ILJB's goodwill and reputation, thus resulting in irreparable harm. *See Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (stating that the likelihood of consumer confusion and risk to plaintiff's reputation causes irreparable injury that cannot be remedied by money damages) (citing *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)).[3]

Next, Defendants face no hardship as a consequence of their compelled compliance with federal law. Nor do they face hardship in complying with their obligations under the Franchise Agreements. *See Little Caesar Enterprises, Inc.*, 2020 WL 2395206, at *4 (citing *Audi*, 469 F.3d at 550)). It is generally not a hardship to comply with lawful obligations, and Defendants here have not even tried to show such a hardship in this case. Plaintiff, on the other hand, will continue to suffer from damage to its reputation and goodwill if Defendants are not enjoined from its illegal conduct with respect to the "I Love Juice Bar" trademarks and trade names. *Audi*, 469 F.3d at 550.

Finally, since Defendants apparently continue to operate in defiance of their ongoing obligations under the terminated Franchise Agreements, it is in the public interest to grant such an injunction to enforce federal trademark laws and to prevent consumers from being misled regarding the source and origin of products purchased from Defendants. *Chanel, Inc. v. Jermaine Wrice*, No. 5:13-CV-891, 2015 WL 521144, at *9 (N.D. Ohio Feb. 9, 2015); *see also Future Lawn, Inc. v. Maumee Bay Landscape Contractors*, L.L.C., 542 F. Supp. 2d 769, 781 (N.D. Ohio 2008)

---

[3] "The law of this Circuit holds that no particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 757–58 (E.D. Mich. 2014) (quoting *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir.1999)). The Sixth Circuit explained that irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Id.*

11

(it is "virtually axiomatic" that the public interest is served by enforcing the protections Congress has granted to owners of service marks) (citation omitted).

The Court has little difficulty finding that these factors collectively weigh in favor of ordering the injunctive relief to prevent Defendants from continuing to violate 15 U.S.C. § 1125(a) with respect to the "I Love Juice Bar" trademark and trade names and from continuing to operate a "Competing Business" in defiance of the terminated Franchise Agreement.

Further, Federal Rule of Civil Procedure 65 requires that all injunctions be "specific in its terms" and shall "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). The terms provided Proposed Default Judgment and Permanent Injunction Against Defendants (Doc. No. 51-2) satisfy this standard. The Court shall therefore grant the injunctive relief requested.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment (Doc. No. 51) is **GRANTED** to the extent set forth in Plaintiff's Proposed Default Judgment and Permanent Injunction Against Defendants (Doc. No. 51-2), which will be ordered as proposed.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE